**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

PATENT CONSTRUCTION SYSTEM,

  Plaintiff,

   v.                                          Civ. No. 05-1033 (PG)

PUERTO   RICAN   AMERICAN   INSURANCE
COMPANY (PRAICO),

  Defendant.

<u>OPINION AND ORDER</u>

     This case is a collection action by plaintiff Patent Construction System ("Patent") against Puerto Rican American Insurance Company ("PRAICO") under a payment bond issued on a private construction project. The money claimed against PRAICO is allegedly owed by the subcontractor, J.R. Insulation Sales & Services, Inc., ("J.R."), for the rental of scaffolds used during the construction. Patent also claims an undetermined amount for service charges on the alleged unpaid balance, in addition to damages, legal interest, and extrajudicial and judicial attorneys' fees incurred by Patent, as well as litigation costs and expenses. Before the Court is PRAICO's Motion to Dismiss the Amended Complaint. (Docket No. 36.) For the following reasons, the Court **DENIES** defendant's motion.

<u>BACKGROUND</u>

     When ruling on a 12(b)(6) motion a court must accept all well-pled factual averments as true and draw all reasonable inferences in favor of the non-moving party. <u>Berezin v. Regency Savings Bank</u>, 234 F.3d 68, 70 (1st Cir.2000). A complaint should not be dismissed unless it appears beyond any doubt that the non-moving party can prove no set of facts which may support a claim entitling him or her to relief. <u>Ronald C. Brown v. Hot, Sexy, and Safe Productions, Inc.</u>, 68 F.3d 525 (1st Cir.1995). The Court therefore culls the relevant facts from the Amended Complaint. (Docket No. 31.)

     Patent is a supplier and renter of scaffolding equipment for use in construction projects. (<u>Id.</u>, at 2.) Patent rented scaffolding equipment to J.R., a contractor of Combustion Engineering Caribe, Inc. ("Combustion"), for the AES Puerto Rico Total Energy Project ("the Project") in Guayama.(<u>Id.</u>) A

Civ. No. 05-1033(PG)                                                    Page 2

Master Rental Agreement ("the Agreement") was executed between Patent and J.R. to apply to any and all rentals of equipment by J.R. from Patent from time to time in Puerto Rico. (Id., at 3.) The Agreement included the equipment rented for the Project. (Id.)

Under the Agreement, invoices in connection with the rental of the equipment were issued by Patent to J.R. commencing with the delivery of the rental equipment and periodically thereafter. The Agreement provides that "the rental equipment shall be computed from the first shipment to the date of return shipment of all equipment... ". (Id.) In connection with the ongoing rental of the referenced scaffolding equipment for the Project, Patent issued invoices to J.R. totaling $513,819,70. (Id.) To date, J.R. has failed to pay despite numerous efforts by Patent to collect the amount owed. (Id.) The amount of the outstanding debt is not in dispute and has been confirmed by J.R. to Patent and to PRAICO. (Id.)

On February 7, 2003, J.R. filed for Chapter 11 bankruptcy protection before the U.S. Bankruptcy Court for the District of Puerto Rico, Case No. 03-2050(GAC). The bankruptcy proceedings are still on-going and J.R. remains under the protection of the Bankruptcy Court. (Id., at 4.)

Defendant PRAICO is J.R.'s Surety in the Project under Payment Bond. No. 0301430102146, executed on July 29, 2002, specifically for the Contract date August 24, 2001, between J.R. and Combustion for the installation of insulation and lagging for the Project. (Id., Exhibit 2.) Pursuant to the Payment Bond, PRAICO as "Surety" and J.R. as "Principal", bound themselves joint and severally unto Combustion, as "Obligee", in the just and full sum of $3,150,000.00. (Id.) Under the Bond, PRAICO is obliged to pay "all persons who have contracts directly with J.R. for labor or materials used" in the performance of the referenced installation contract in the event of J.R.'s default. (Id.)

Following J.R.'s default, Patent notified PRAICO on April 28, 2003, seeking payment under the Payment Bond for J.R.'s debt which at that time amounted to $369,505.30. (Id., at 4-5.) Patent further informed PRAICO that the rental equipment was still on the job and that charges would continue to accrue until the equipment was returned in good condition. The amount of

Civ. No. 05-1033(PG)                                                    Page 3

J.R.'s debt continued to accrue through October 2003, up to the total principal amount of $513,819.03. (Id., at 5 & Exhibit 3.) To date, PRAICO has refused to pay Patent the full amount owed claiming that it is not obliged to do so under the particular terms and conditions of the Payment Bond. PRAICO has only paid the amount of $135,048.03 and refuses to pay the balance of $378,771.67. On January 13, 2005, Patent filed the above-captioned suit to recover the outstanding debt under the Payment Bond.

## DISCUSSION

PRAICO argues that the Amended Complaint should be dismissed because Patent failed to comply with section 3(b) of the Payment Bond which requires that it make J.R. a party to this suit. It is PRAICO's position that the joining of J.R. to the present action is a condition precedent to the enforcement of any rights or claims under the bond. Indeed, PRAICO contends that J.R. is a contractually established indispensable or necessary party pursuant to the Bond. (See Docket No. 36 at 4.) PRAICO argues that Patent was aware that it was required to join J.R. as a party because more than a year before filing this action it sought relief from the Bankruptcy Court from the automatic stay[1].

On October 15, 2003, Patent filed a motion before the Bankruptcy Court for the District of Puerto Rico titled "Motion Requesting Lift of Stay to Litigate". In this Motion, Patent argued that J.R.'s presence in a judicial proceeding was necessary regardless of PRAICO's liability. The request was not granted. PRAICO alleges that the reason for the denial was that Patent failed to comply with the Bankruptcy Court rules and to include the fee prescribed by the appendix to 28 U.S.C. § 1930. Based on this action by Patent, PRAICO argues that the former knew that J.R. was an indispensable party to this suit. PRAICO vehemently argues that Patent's own actions prior to the filing of this case show that it had a clear understanding of the Bond language and that it interpreted section 3(b) of the Payment Bond just like PRAICO did.

---

[1] The filing of a petition in the Bankruptcy Court operates as a stay, applicable to all entities, of the commencement or continuation of a judicial proceeding against the debtor that was or could have been commenced before the beginning of the bankruptcy filing. The stay continues in effect until the case is closed or dismissed. 11 U.S.C. § 362.

Civ. No. 05-1033(PG)                                              Page 4

PRAICO contends that Patent cannot claim that the Bond contained a condition which was impossible to fulfill because Patent's attempt to lift the stay and the Order from the Bankruptcy Court shows that the relief was proper and attainable. Patent's previous counsel's failed to comply with certain procedures. (See Order of Nov. 13, 2003, Case No. 03-02050GAC, Docket No. 97.) Patent never cured the deficiencies and opted to sit idle rather than comply with the Bond's requirements. PRAICO argues that Patent should face the consequences of its inaction. In sum, because Patent failed to comply with the terms and conditions of the Payment Bond, PRAICO argues it is not liable for the amount owed by J.R., therefore, the Complaint should be dismissed.

In opposition, Patent contends that J.R. is not a necessary party to this action because the extent of J.R.'s liability has already been admitted by the latter[2]. The text of the Bond is completely silent as to what is to be done in the event that the Principal (J.R.) is in bankruptcy at the time that a beneficiary files a complaint against PRAICO as surety. It is further silent as to what course should be followed in the event that, as in this case, the Principal has stipulated its liability as well as the exact amount owed to the creditor/beneficiary, which would render moot the reason why joinder was necessary. The language of the Bond, Patent posits, is ambiguous and does not stipulate what PRAICO reads into it. Patent insists that nowhere in the Bond is it required to seek relief from the automatic stay that protects J.R. as a Chapter 11 debtor in possession.

With regards to PRAICO's argument that Patent tried unsuccessfully to obtain relief from the automatic stay, it clarifies that at the time it sought a lift of the stay, the amounts owed by J.R. were in dispute and that it was not until a year later that J.R., PRAICO, and Patent entered into the partial payment agreement under which J.R. stipulated the exact amount still owed to Patent and the latter's right to sue PRAICO under the Bond. Patent states that its prior attempt to seek relief from the stay does not alter the Bond's language and cannot be interpreted as PRAICO wishes. It argues that any clause in a Bond document that seeks to limit or immunize a surety's liability on

_____

[2] Patent also argues that PRAICO is procedurally barred from bringing a second motion to dismiss without obtaining prior leave of Court. Because we deny the motion to dismiss on its merits, the Court need not address Patent's procedural arguments.

Civ. No. 05-1033(PG)                                                  Page 5

account of the bankruptcy of the Principal/debtor would be contrary to law and therefore null and unenforceable. Patent contends that the Bond language was intended for a non-bankruptcy scenario because if not it would be a transparent attempt to avoid the very liability that a Payment Bond is supposed to cover. Lastly, Patent claims that PRAICO's insistence in that it must obtain relief from the automatic stay per the provision of the pre-bankruptcy petition Bond contract would preclude the debtor (J.R.) from taking advantage of the most fundamental bankruptcy protection.

PRAICO retorts arguing that only if Patent shows that the Bond's requirement is impossible to comply with or that it is immoral or illegal, may it be excused from the obligation to comply with it. See P.R. Stat. Ann. 31 § 3372 (contractual provisions contrary to law and public order). Only if Patent had properly made the request for the lift of stay, in accordance with the local Bankruptcy Rules and the Court still denied it, would the condition be impossible to fulfill and PRAICO would be precluded from raising the defense of indispensable party.

PRAICO takes issue with Patent's argument that the Bond is ambiguous. It argues that the fact that the Bond makes no mention of the possibility of a bankruptcy does not render the contract ambiguous. The Bond literally states that the Principal shall be made a party. It is equally clear that the intention of the parties was to make the Principal a party. Patent's attempt to obtain a lift of the stay is quite telling and shows that it interpreted the Bond language in the same manner as PRAICO. This is determinative, PRAICO avers, in making an interpretation of the clause. See P.R. Stat. Ann. 31 § 3472 ("In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract.") PRAICO argues that the Court should not as Patent intends downplay the importance of its failed attempt at seeking a lift of the stay. Patent's claim that it sought the relief at that time only because the amount of J.R.'s debt was still in controversy should not sway the Court to disregard the Bond's language. Faithful performance of an obligation cannot be excused by claiming that the obligation's underlying purpose was rendered moot.

Civ. No. 05-1033(PG)                                                    Page 6

      Finally, PRAICO avers that Patent has consistently asserted that PRAICO
and J.R. are joint and severally liable thus making J.R.'s presence
unnecessary from a Fed.R.Civ.P. 19 analysis. This last argument puzzles the
Court. PRAICO now contradicts itself claiming J.R. is not an indispensable
party all the while arguing that the Bond's language makes J.R. an
indispensable party.

      Having carefully reviewed the record and the applicable law, the Court
finds that joinder is not required, therefore, defendant's motion is denied.

      "A security or a surety 'binds himself to pay or perform for a third
person in case the latter should fail to do so'." Federal Deposit Ins. Corp.,
691 F.Supp. at 565 (quoting Art. 1721, P.R. Stat. Ann. 31 § 4871). "A surety
who binds himself jointly with the principal debtor loses the right of
exhaustion of remedies of the debtor's property or to the return of an
execution unsatisfied." Id. (and cases cited therein); see P.R. Stat. Ann. 31
§ 4892. In other words, "a joint surety may be sued for collection in case of
default even before the creditor has sued the principal debtor-right of
discussion ("derecho de excusión")." Federal Deposit Ins. Corp., 691 F.Supp.
at 565. "In a sense, the joint surety is a joint debtor with respect to the
creditor. While the joint surety preserves his characteristics of surety
vis-a-vis the debtor, the joint surety loses his right of discussion vis-a-vis
the principal creditor." Id.,(citation omitted). "The Spanish word excusión
derives from the latin word excussio. Under civil law, excussio is defined as
a diligent prosecution of a remedy against a debtor or the exhaustion of a
remedy against a principal debtor prior to resorting to his sureties. The
literal translation of excussio is discussion." Id.,(citing Black's Law
Dictionary 509 (5th ed. 1979)).

      The Bond signed between the parties states that it binds J.R. and PRAICO
"jointly and severally". (Docket No. 1, Exhibit 1 at p. 4.) Under Puerto Rico
law it is well established that a guarantor is not an indispensable party if
the guarantor "is solidarily bound with a debtor, namely, jointly and
severally liable." U.S.I. Properties Corp. v. M.D. Constr. Co., 860 F.2d 1,
7 (1st Cir.1988). "In this situation the surety is not a subsidiary debtor but
a principal debtor, and their obligations are governed not by the chapter on
Principal and Surety of the Civil Code, P.R [Stat. Ann.] 31 § 4891, but

subchapter IV, Chapter 245 of the same Title of the Code, [§] 3108." <u>McDonough</u>
<u>Const. Co. of Fla. v. Maryland Cas. Co.</u>, 215 F.Supp. 488, 489 (D.C.P.R.1961).
This section reads in pertinent part: "A creditor may sue **ANY** of the joint
debtors or all of them simultaneously." P.R. Stat. Ann. 31 § 3108 (emphasis
ours). "Construing these sections in connection with a bond containing the
same language, with respect to the surety's obligation, the Supreme Court of
Puerto Rico held that the obligees action against the surety was entirely
independent of any action against the principal." <u>Maryland Cas. Co.</u>, 215
F.Supp. at 489. Therefore, under Puerto Rican law, because the Payment Bond
binds the surety jointly and severally with the principal debtor, it can be
sued independently without joining the subcontractor (J.R.), and the
contractor (Patent) is not required to comply with any condition precedent to
suit against surety. <u>Id.</u>, (finding that because surety is principal debtor,
not subsidiary to the subcontractor in this case, plaintiff ... could sue
independently, without joining the sub-contractor and plaintiff could sue the
surety without complying with any of the conditions precedent provided in P.R.
Stat Ann. 31 § 373 dealing with securities and sureties.) It follows then that
pursuant to Puerto Rico law, and the language of the Bond, Patent has the
choice of only suing PRAICO and it needs not join J.R. to obtain relief. <u>Id.</u>;
see <u>Federal Deposit Ins. Corp.</u>, 691 F.Supp. at 566.

> The Payment Bond states in Section 3(b)
>
> No claim, action, suit or proceeding shall be held or maintained
> against the Surety on this instrument: ... After the expiration of
> twelve (12) months following the date on which Principal cease work
> on said contract, the Principal shall be made party to any such
> suit or action and be served with process prior to or
> contemporaneously with the Surety if the Principal can with
> reasonable diligence be found.

(Docket No. 1, Exhibit 1 at 4.) This is the section PRAICO asks the Court to
enforce and find Patent in non-compliance. When read as a whole, the Bond
clearly contains contradictory and conflicting language. On the one part it
establishes joint and several liability, giving Patent the choice of who to
sue, and in another part requires joinder of J.R. Surprisingly, neither party
addressed in their extensive arguments the last part of Section 3(b) which
conditions the requirement of the joinder if the principal "can with
reasonable diligence be found". No where in the Payment Bond does it say what

Civ. No. 05-1033(PG)                                                    Page 8

"reasonable diligence" means.

    "Under Puerto Rico law, surety contracts are to be construed liberally
in favor of the beneficiary." <u>Citibank v. Grupo Cupey, Inc.</u>, 382 F.3d 29, 31
(1st Cir. 2004) (<u>citing</u> <u>Luan Inv. Corp. v. Rexach Constr. Co.</u>, 152 D.P.R. 652,
663 (2000). "[T]he old doctrine ... to the effect that the slightest violation
of the contract on the part of the owner released the surety from total
liability is no longer in force." <u>E.L.A. v. Urb. Damiro, Inc.</u>, 12 P.R. Offic.
Trans. 300, 112 D.P.R. 244, 248 (1982), 1982 WL 210657, at *2. (P.R. March 8,
1982)(<u>quoting</u> <u>Olazabal v. U.S. Fidelity, etc.</u>, 103 D.P.R. 448, 454
(1975))(citation omitted). "This liberal rule of construction applies only
where the text of the agreement is ambiguous." <u>Citibank</u>, 382 F.3d at 31. Only
when the text of the "bond agreement is clear, or the true meaning of its
clauses can be easily discerned, the courts should adhere to its text." <u>Id.</u>,
(<u>quoting</u> <u>Caguas Plumbing, Inc., v. Continental Const. Corp.</u>, 2001 T.S.P.R.
164, 2001 WL 1618390 at *5 (P.R. Nov. 30, 2001).

    The gist of PRAICO's argument is that because Patent did not join J.R.
to this suit it is not liable under the Bond. This is unsustainable. Payment
Bonds ensure that those who furnish labor and materials for a project will be
paid. <u>U.S. v. Stern</u>, 13 F.3d 489, 492 n.1 (1st Cir. 1994). The whole purpose
for executing the Bond at issue was to guaranty that in the event of J.R.'s
default, a fact not in controversy, PRAICO would pay Patent for the rental of
the equipment. PRAICO insists on a strict interpretation of the Bond's
provision requiring joinder all the while ignoring the Bond's own language
establishing joint liability. It would appear that PRAICO is simply trying to
free itself of its contractually established duty to pay by focusing on a
technicality. PRAICO's position would turn executing Payment Bonds into an
effort in futility. The title of the contract, "Payment Bond", hints even the
most lay of readers as to what is its ultimate purpose.

> Though it must start with the expression contained in the spoken
> or written words, the interpretation of contracts and other
> juridical acts cannot stop at their strict or grammatical sense,
> and must delve basically into the intention of the parties and the
> spirit and purpose that have presided the business, it being
> inferred from the concurring circumstances and from the whole
> conduct of the interested parties.

<u>Banco de la Vivienda v. Pagan Ins. Underwriters</u>, 11 P.R. Offic. Trans. 1, 1981

Civ. No. 05-1033(PG)                                                    Page 9

WL 176504, at *7 (P.R. May 6, 1981). PRAICO's insistence on the strict enforcement of the Bond's provision requiring joinder would *de facto* make J.R. an indispensable party which runs contrary to the Bond's own language and Puerto Rico law. What is more, as Patent argues, any clause in a Bond document that seeks to limit or immunize a surety's liability on account of the bankruptcy of the Principal/debtor would be contrary to law[3].   The Bond clearly states that it covers all persons who have contracts with J.R. for labor and materials used in performance of the construction contract. (Docket No. 1, Exhibit 1 at 4.) Accordingly, the Court denies PRAICO's motion.

### CONCLUSION

WHEREFORE, for the preceding reasons, the Court DENIES PRAICO's Motion to Dismiss. **(Docket No. 36.)**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, July 5, 2007.

                                        S/JUAN M. PEREZ-GIMENEZ
                                        U.S. DISTRICT JUDGE

---

[3] Even if the parties had not included the joint and several liability provision, we find that Patent is not required to join J.R. because it is under the protection of the Bankruptcy Court. Reading the Bond liberally in favor of the beneficiary, we find the last part of Section 3(b), which conditions the requirement of the joinder if the principal "can with reasonable diligence be found", may be understood to encompass the situation at hand. Because J.R. is under the protection of the Bankruptcy Court and cannot be sued, in light of the particular circumstances of the case and the applicable law, it can be interpreted that J.R. cannot be "found" within the meaning of Section 3(b) of the Bond.

The court needs not concern itself with extensive argumentation and theories advanced by the PRAICO regarding Patent's previous failed attempt in obtaining relief from the Bankruptcy Stay. This is so because even if the court were to consider PRAICO's position that Patent's actions show it also understood at that time that it had to join J.R., it does not alter the fact that the Bond establishes joint liability, that J.R. is not an indispensable party, and that any ambiguities in the Bond are to be interpreted in Patent's favor. PRAICO simply fails to show why the Court should free it of its contractually established duty to pay Patent pursuant to the Bond.